1

2

3      _____ FILED   _____ ENTERED
       _____ LODGED _____ RECEIVED

       SG      SEP 0 8 2017

4                      AT SEATTLE
              CLERK U.S. DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
5      BY                              DEPUTY

6

7

8             UNITED STATES DISTRICT COURT,
          WESTERN DISTRICT OF WASHINGTON
9                    AT SEATTLE

10           17 CV-01354 RSM

11          Arlene M. Brown                 Case No.:

            Plaintiff,
12                                          COMPLAINT OF THE EMPLOYEE
                                            RETIREMENT INCOME SECURITY
13      vs.                                 ACT ("ERISA") PENSION
                                            VIOLATIONS AND
14          The Boeing Company,             APPLICABILITY
        Employee Benefit Plans Committee
            Defendant(s).
15

16      Plaintiff
        Arlene M. Brown
17      239 SW 189th Pl
        Normandy Park WA 98166
18      (206)431-8693

19

20      Defendant
        Employee Benefit Plans Committee
21      The Boeing Company
        c/o United States Corporation Company of Illinois
22      33 North LaSalle Street
        Chicago, Illinois, 60602
23

24

25

## I JURISDICTION

For many reasons this is the appropriate jurisdiction and venue including 28 U.S.C. § 1331 and

ERISA Section 502(e) (1), 29 U.S.C. § 1132(e)(1), 28 U.S.C. § 1391.

Plaintiff legal King County resident since becoming a Boeing employee in 1978.

Plaintiff Boeing work location in King County for entire career except when on 2 month

temporary assignment.

The Boeing Company offices were in King County Washington when plaintiff hired into Boeing.

The corporate offices moved to Chicago, Illinois in 2001. The case spans both times.

Some aspects are similar to ERISA pension Case 2:13-cv-01569 Monper et al v. Boeing whose

jurisdiction and venue is already established.

## II INTRODUCTION

1.     This action by Plaintiff Arlene M. Brown seeks to remedy fiduciary breaches by

fiduciaries of the pension plans in which she is listed as participant pursuant to the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq.

Plaintiff seeks appropriate equitable relief available under ERISA Section 502(a)(1), 29 U.S.C. §

1132(a)(1) and Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Also plaintiff brings claims for co-

fiduciary liability and failure to monitor, claims related to ERISA 204 (h), 29 U.S.C. § 1054  (h),

as well as for other relief. The statute of limitations does not apply to the December 31, 1998

issue due to the nature of the ERISA violations. The subsequent 2016 plan change made the

pension disparity even greater.

2.     The plaintiff was covered by The Boeing Company Employee Retirement Plan (BCERP)

plan upon hiring into Boeing as an engineer in 1978.  Late 1995 she was pressured to delay her

Associate Technical Fellow (ATF) engineering application to temporarily work in management

due to a "golden handshake" staffing crisis. She agreed provided it was about two years and that she could apply for ATF while a temporary manager. This meant a heavy work load as she split her time between engineering that could satisfy the ATF criteria and managing a team. Benefits, including pension, were identical for either pay code. Having spent much of 1998 going through the arduous ATF application, she passed the final interview on November 17, 1998. She immediately began transferring her management duties to others and that was completed on or before she left for vacation December 19, 1998. While on vacation a Boeing document was released December 21 formalizing the transfer of her management assignment to a manager. Her work history was updated to reflect her ATF title became effective January 1, 1999.  The work history shows her on the management payroll on December 31, 1998 even though she had completely returned to full time engineering December 19, 1998 or sooner. It was likely December 3, 1998 but that is harder to prove. She was completely uninformed that the effective date influenced whether she retained her heritage Boeing plan or was moved to a plan with significantly lower monthly benefits particularly when considering future benefit accruals.

3.      As result of inquiring about a PVP ERISA notification for a 2016 wage freeze change, she eventually learned in that her BCERP pension had transferred to PVP on January 1 1999 and that significantly reduced her monthly pension benefit. The evidence indicates she did not engage in any management activity after December 19[th,] 1998. Changing her work history to list her as an engineer instead of a manager December 18, 1998 or Dec 31, 1998 instead of January 1, 1999 would eliminate large pension reduction and honor the 1995 verbal contract regarding the terms of her assignment. The Boeing Human Resources and pension appeal

process did not allow for any discussion or submittal of new evidence so some of the

information herein is new to Boeing.

4.      Under ERISA, fiduciaries must operate the plan prudently and for the exclusive benefit

of participants.  A conflict of interest arises between the business interests of Boeing which

has been very focused on reducing pension liabilities and the plaintiff's request to fully restore

her Boeing heritage benefits. Under ERISA fiduciary responsibilities extend beyond that of the

officially named fiduciaries and extend to their delegates and also to others acting officially on

Boeing's behalf when communicating items such as whether the difference in plans is trivial.

5.      **Acronyms**

ATF- Associate Technical Fellow and tied to being a Grade 20 engineer (different rules now)

BCERP -The Boeing Company Employee Retirement Plan

BCERP  SPD - The Boeing Company Employee Retirement Plan Summary Description Document

PVP - Pension Value Plan includes The Pension Value Plan for Employees of The Boeing

   Company, The Boeing Company Pension Value Plan for Heritage MDC Employees and The

   Boeing Company Pension Value Plan. Herein PVP refers only to the Boeing heritage portion.

PVP SPD - Pension Value Plan Summary Description Document

SPEEA - Society of Professional Engineering Employees in Aerospace

## II.      DEFENDANT AND FIDUCIARY RESPONSIBILITIES

1.      In accordance with the PVP plan the agent for services is Employee Benefit Plans

Committee of The Boeing Company.  The plan name is The Pension Value Plan for Employees of

the Boeing Company.  It is Plan 100.  The Plan Administrator, Employee Benefit Plans

Committee, has fiduciary responsibilities. The Chair of the Employee Benefit Plans Committee

also serves as the Senior Vice President of Human Resources.  This committee will be referred to as the "Benefits Committee" herein. The Benefits committee evaluated the pension appeal and denied it in Memo 2941, dated March 13, 1017 which was mailed March 14, 2017 and received March 16, 2017.  Each of these committee members had fiduciary responsibilities.

2.      As part of that review the Benefits Committee considered the Human Resources (HR) re-characterization work history change request that was also denied. This review will be referred to as "Re-Characterization Reviewers".  The local HR representative reported that two lawyers and one Manufacturing Technology Integration manager were involved. Each of these reviewers had fiduciary responsibilities. The HR representative was replaced after she left Boeing.

3.      Preceding these decisions, one Pension Operations representative was involved with the denying the initial claim to use BCERP instead of PVP for pension calculations. This claim review triggered the 60 day clock for submitting the pension appeal.

4.      Depending on the content of the communication, the Total Access Representatives have fiduciary responsibilities such as when they advise a benefit difference is trivial and it is not.

5.      Both the local HR representative and the manager who both submitted the Associate Technical Application on the plaintiff's behalf and subsequently approved the pay code change in the pension plan transition period had fiduciary roles.

6.      Functional manager responsible for plaintiff's skill code had fiduciary responsibilities.

## III. THE NATURE AND TERMS OF THE RELEVANT PENSION PLANS

1.      **Types of Plans**   The 1997 merger of Boeing and McDonnell merger led to multiple pension plans. The Boeing Company Employee Retirement Plan (BCERP) originally covered both SPEEA union members and non-union including non-executive heritage Boeing managers.  As of January 1, 1999 only SPEEA union members retained BCERP coverage.  The Pension Value Plan (PVP) includes multiple plans but in this context is "The Pension Value Plan for Employees of The Boeing Company" that covers heritage Boeing. All heritage Boeing non-union employees that were covered by BCERP had their benefits transferred into PVP effective January 1, 1999 if they were non-union on December 31, 1998.

2.      **Major Monthly Pension Benefit Difference in Plans.**  BCERP weights salary for the last five years much heavier than does PVP when determining monthly benefit. Below addresses the major reason for the large disparity in benefit estimates. It does not address all the differences such as vesting and has also simplified by limiting it to the plaintiff without any early retirement adjustments.

A. BECRP bases its calculations on highest monthly earnings over 60 consecutive months and then multiplies that monthly final average earnings by all BCERP credited service years. That number is then multiplied but 1.5% before adjustments are made related to social security.

B. PVP calculates the heritage Boeing benefit as if employee quit in 1998 from a salary perspective. The 2016 unfair labor practice settlement increased the 1998 value by 1%. The salary based number is then multiplied by an indexing factor related to salary growth since 1998.

C. The next step for PVP would normally be to add credits service but that is zero for plaintiff. The PVP SPD edition 2003 page 40 describes additional bonus credited service related to 20, 21,

22 years of service and one year for all heritage Boeing in the plan as of January 1, 1999. As plaintiff was already back in BCERP presumably that explains the zero.

D. The basis of the calculations below are PVP Benefits Estimates reports reflect the 2016 increase due to the of an unfair labor practice settlement. Her PVP benefit monthly single life estimate for 20.473 years is $3834.57 regardless of whether she retires at age 62 or 65 due to the 2016 change that froze the upper limit used for indexing. This value is lower than runs prior to the freeze.

Using her BCERP run for these same 20.473 years her benefit for age 62 would be $765 higher than $3834.57.  For age 65, assuming a 2% annual increase in wages, the monthly benefit would be $945 higher than $3834.57 for a new rounded total of $4,780.  BCERP calculations use highest average earnings, service years and a social security factor related to age in the formula so continues to increase the longer one stays employed. Therefore, the disparity continues to grow. For these age 65 calculations and using social security mortality tables the life time impact underpayment $220,000.  Until the recent layoffs changed the work environment, she had been debating between retiring at 70 versus 72 (50 years) so her impact would have been larger than the age 65 which is a typical age used for ERISA cases.

Note the 20.473 years is the number Boeing uses and has not been checked for accuracy.

3.      **Inability to easily check PVP Heritage Boeing Benefit for Accuracy**

A. **BECRP Clear** The BCERP Benefits Estimates report explains the formulas for the prime and alternate benefit options. It shows the detailed calculations so is easy to check underlying assumptions.

B. **PVP Mystery** Exactly how the heritage benefit is calculated prior to the indexing is not shown in the pension estimates or explained in the PVP SPD. There is no easy way to check it. To check

requires obtaining salary history, credited service history, understanding BCERP's multiple

formulas and then determining your primary social security primary insurance amount (PIA) to

be able to calculate the monthly benefit.  It is not reasonable to expect an employee to be able

to do this.

### IV  DISCOVERING PENSION APPLICABILITY, CHANGES AND ADVERSE IMPACTS

1.      **2014 Plan Change Notification Leads to Discovering Dec. 31, 1998 Transfer**   In 2011

she became aware of having two pension plans when accessing a post-merger online benefit

estimating system. At the time she assumed all heritage employees had two plans due to the

merger.  In June 2014 when the plaintiff received a form letter accompanied by a Frequently

Asked Questions sheet regarding a 2016 wage freeze she had heard would apply to non-union

managers she was surprised. There was no reference to applying to non-union.  Through

Boeing's Total Access help line inquiries she learned that all her BCERP pension benefit earned

through December 31 1998 had been transferred to a PVP plan because she had been

considered to be on the management payroll on that day. This level of clarity required multiple

Total Access calls in 2014 and 2016. Some representatives thought January 1, not Dec 31 was

the pension transfer date. She was consistently assured the benefit "differences were trivial".

2.      **Large Disparity, Not Trivial and Language Unclear**   Further research included taking a

class and making multiple pension estimate runs to deduce trends. She found a large disparity

in benefits despite multiple Total Access representatives assertions that the benefit

"differences were trivial".  Researching the underlying cause of the disconnects revealed

untimely notification, unclear plan language, insufficient detail in benefit estimates and

fiduciary failures.

3.  **Age Impact**   The basic nature of the different pension plan calculations reliance on age and years of service. Therefore, the disparity due to the transfer was worse for the plaintiff than if she had been younger.

4.  **Significant Benefit Reduction that Continues to Get Worse** Her BCERP heritage Boeing pension benefits earned between 1978 and 1998 were transferred into the PVP plan even though her circumstances warranted being kept in the BCERP plan. Using the PVP pension plan calculations leads to a significant benefit reduction that is presumably exceeds any de minimus threshold the Secretary of State would set. The disparity, which continues to grow the longer she remains employed, was made even greater by a PVP 2016 wage freeze in the calculations. The freeze contradicts the terms of the heritage Boeing provisions in the 1999 PVP pension plan.

5.  **Unfair Labor Practice Right Direction but too little to Close Large Gap** The PVP Unfair Labor Practice settlement, filed by SPEEA August 2014, increased the Boeing heritage benefit by one percent effective March 4, 2016  but did very little to close the  monthly benefit disparity between the PVP and BCERP for the plaintiff. It added only $38 a month for the plaintiff. The number in the formula referred to as heritage benefit is calculated as if she quit in 1998 and then the indexing is applied with a frozen upper limit.   The SPEEA union represents heritage Boeing engineers and technicians in various regions including Washington State.

6. To retain legal rights to address this pension disparity, the plaintiff could not take advantage of a 2016 voluntary layoff that included a significant bonus.

7. Boeing's  unwillingness to engage in two way discussion or review new evidence outside court has cost the plaintiff time and money  that could likely been avoided if they fulfilled their fiduciary responsibilities.

1

2

3  **VI  FIXING THE ONE MINUTE DISCONNECT TO RECOVER THOUSANDS ANNUALLY TO COMPLY**

4  **WITH FIDUCIARY RESPONSIBILITIES, HONOR COMMITMENTS AND MATCH REALITY**

5  **1.      Summary of Reviews** The circumstances justifying her remaining in BCERP were

6  submitted to Retirement Operations August 26, 2017 but were denied Sept 14, 2016. In parallel

7  she pursued the preferred Human Resources (HR) re-characterization request that was denied

8  December 5, 2016. Her November 2016 formal pension appeal was denied on March 13, 2017

9  and referenced the Re-characterization Request denied Dec 5, 2016.

10  **A.      Retirement Operations Claim Letter Response Retirement** Operations rejected a

11  change request by citing that "temporary" is less than 90 days. In subsequent email exchanges

12  when requesting them to cite a reference as there is no definition in the pension plans, he

13  explained in a September 23, 2016 email that "it is an HR function". He also indicated because

14  the pay raise is reflected in plaintiff's pension calculations it was not temporary. Considering

15  she did not want the assignment and Boeing was having female wage discrimination issues, it

16  was logical to receive a raise. The Beck vs Boeing suit filed in 2000 resulted in a $72 million

17  settlement based primarily on 1997-2000 survey data of Boeing Puget Sound female

18  employees.

19

20  **B.      Re-characterization Request**  The plaintiff does not know the entirety of what the Re-

21  characterization Reviewers reviewed or their detailed rationale behind their denial. It was only

22  explained verbally that even though D204-30970-1 showed she had stopped her assigned

23  management role that was not sufficient as she may have done some other management

24

25

1   action. There was never an opportunity to rebut HR determination or assumptions with data.

2   Boeing's process requires filing in court for two-way communication.

3   C.      **Benefits Committee**

4   1. The PVP plan allows for exceptions for "temporary management assignments" to remain in

5   BCERP but the Benefits Committee strictly relied on the work history denial by the HR re-

6   characterization request. The Benefits Committee rejected the plaintiffs "temporary"

7   assignment despite their being no documented pension plan specific definition to override the

8   common usage of the term and dictionary definition of "temporary" or context of the

9   assignment agreement. The plaintiff had remained a member of SPEEA union but without

10  voting rights while in the management assignment. The verbal contract had been for temporary

11  but the work history shows just management.

12  2. It is interesting to note the appeal Memo response was totally silent on the Boeing library

13  D204-30970-1  document that showed she had transferred all her assigned management duties

14  to a manager no later than December 21, 1998.

15  3. The Benefits Committee considered the Total Compensation Update sufficient to meet ERISA

16  notification requirements even though they did not know when it was mailed. They pointed to

17  the year 2000 edition of the PVP SCD for how heritage benefits are treated.

18  4.      **Evidence for Remaining Under BCERP**

19  A.  Two approaches that could have been used to avoid the unfair pension transfer. The appeal

20  could have ruled she was in a temporary management role but the easier approach would to

21  rule she be re-characterized back to engineering by changing her work history to reflect the

22  reality she was not doing any management work of any kind. Reasons to keep all her pension as

23  BCERP include:

(1) To honor and be consistent with November 1995 agreement that had no pension impact associated with postponing the Associate Technical Fellow (ATF) engineer promotion application and take temporary management position due to golden handshake staffing crisis.

(2) Never expressed interest to stay in management assignment due to discrimination issues.

(3) Arduous Associate Technical Fellow (ATF) engineering application process officially stated May 1998, verbal approval after final interview November 1998, and official paper notification was dated Dec 18, 1998. She spent over 200 personal hours on ATF application to officially return to engineering in 1998.

(4) She was a Grade 18 engineer before agreeing to taking on some management responsibilities temporarily. She was a Grade 20 engineer after the ATF promotion. Obviously she performed engineering between those times. Receiving no raise for the ATF SPEEA Grade 20 engineering promotion  is also indicative she was already working as an engineer prior to the official work history pay code change on January 1, 1999.

(5) On Dec. 21 1998 the NATO Mid-Term Team Execution document D204-30970-1 Revision B was officially released in Boeing library system formalizing the replacement of plaintiff with Manager Beverley.  Note the document is International Traffic in Arms Regulations (ITAR) export controlled so she obtained export approval to include the  title page and "administrative" change page for review by both the re-characterization reviewers and  Boeing Appeal process submittals. She also provided a way to order it provided they were U.S. citizens, The only verbal rationale shared with plaintiff for the re-characterization denial was she could have also done some other management thing so it was "not sufficient". Why didn't the appeal address this document?

(6) Performance reviews were always conducted first quarter, not last quarter like in 2017

1   (7) Boeing was shut down for the holidays Dec 23 and reopened Jan 2, 1999.

2   (8) Air Vehicle management was required to record unpaid labor and no labor was submitted.

3   (9) Dec. 19, 1998 was the last possible date she could done anything management related.  She

4   was on vacation Dec 20, 1998 - Jan 3, 1999 with no means to perform any Boeing work. Paper

5   based systems required being in person to work (no Boeing phone or lap top). No reviewers

6   were aware of this travel that invalidates the only reason shared with her for being denied the

7   re-characterization. The original car rental receipts for her island vacation have time plus date

8   and are signed by the plaintiff.

9    B.  Note there are also ERISA provisions under 29 U.S.C. § 1054(h)(6) to use the BCERP even if

10   she is considered a manager on December 31, 1998 for "egregious" situations

11

12   5.    **Widespread Ignorance or Failure to Fulfill Fiduciary Responsibilities**  If anyone had

13   notified the plaintiff of any upcoming changes in pension terms planned for the heritage Boeing

14   management pay code, she would have requested changing  back to engineering no later than

15   December 31 1998 instead of waiting for the automatic  ATF title effectivity of  January 1st.

16   Considering the ATF date is always January 1 from a fiduciary perspective one would expect

17   both her local HR representative that she talked with frequently as well as the manager

18   approving the transfer to have informed her of  the pending pension impacts especially since

19   they were also impacted. There were other managers involved with her ATF promotion that

20   also under normal circumstances I would have expected them to mention it. Did they also not

21   know about the change due to untimely and unclear notification or did they fail to fulfill their

22   fiduciary responsibilities? The communication was sufficiently lacking to fall under

23   concealment. Particularly viewed in the light of other **Boeing** lawsuits, the question arises if

24   Boeing deliberately did not want its employees to fully understand the ramifications. Upon

25

merging executive heritage McDonnell Douglas executives played key roles in Boeing strategy

so their lawsuits are also relevant. Since the 1997 merger the pressure to reduce pension

commitments has been intense.

**VII     PLAN INADEQUATE COMMUNICATION MAJOR CONTRIBUTOR TO CONFUSION AND**

**CONCEALED DISPARITIES**

**1.     1998 Notification** Boeing claims to have mailed a Total Compensation Update in

"December of 1998" . A copy was provided a copy in Appendix D of their Memo 2491.

Assuming the update arrived in December, by the time it arrived it would likely have been too

late to change pay codes as Boeing shut down for the holidays on December 23. Also the week

before the shutdown is a popular vacation time.

A. Although the notice may appear clear to an HR expert, ERISA requires notifications to be

clear for average people. In big bold ¼ inch high font the ERISA notice states: **Nonrepresented**

**Salaried Employees To Transfer to New Pension Value Plan, Effective January 1, 1999**. The

first sentence in regular font says  *"transferred effective January 1, 1999"*.   Plaintiff's work

history reflected she was Grade 20 engineer on January 1st, why would she continue to read?

B.  The first line on the other side says *"....the benefit you have earned under The Boeing*

*Company Employee retirement Plan will be preserved and will never be decreased. In fact, this*

*heritage benefit will increase with any salary increases that you earn between 1999 and the*

*date of your retirement."*  Why would one worry? Note the January 1, 2016 wage freeze

contradicts this statement and makes the loss even greater.

C. The Update also refers to the Boeing News from August 1998.  The paper newspapers were

stacked in an inconvenient location, available first come first serve and usually ran out  within a

day or less so there was no way to get a copy six months later. Plaintiff had saved a merger

insert but it was not that week. The Update says the newspaper said *"... the rate at which you earn future benefits may be more- or less – than the rate at which you would have earned benefits had you continued"* under BCERP.   Would the average person expect realize that could equate to over a $200,000 lifetime shortfall assuming age 65 retirement and using the social security life expectancy table without considering interest?

D. The 2014 notification regarding the PVP wage freeze was much more obvious that is was an important notification. It was a formal letter with an attached Frequently Asked Questions pager.   It did not make any mention of it pertaining to non-union employees. It referred only to the PVP plan. The Exhibit D in the Appeal Memo looks like was the standard format used to communicate a variety of less consequential information.

**2. Pension Value Plan Summary Description Document (PVP SPD) Issues**

A.        **Appeal Memo Exhibit**. The appeal memo 2491 Exhibit E included one page from the 2000 edition they claimed was mailed first quarter of 1999.  The year 2000 edition states under the section Participants of Prior Retirement Plans state near the top of the page  *"For example, if you were on the active company payroll beginning on January 1, 1999 and you were a participant on December 31, 1999, of The Boeing Company Employment Retirement Plan or the employee Retirement Income Plan of McDonnell Douglas Corporation –Salaried Plan, your participation in the Pension Value Plan started immediately."*        At the bottom of the page after a lots of wording about other plans not relevant to Boeing heritage states *"Your heritage benefit you earned under a prior retirement plan was transferred to the Pension Plan"* .  This does not make it obvious that regardless of whether you were in management for 20 years or just the day of December 31, 1998 ALL of your BCERP benefit was transferred to PVP.

B.      **PVP Boeing Heritage Appendix** Page 39 of Appendix A in the PVP SPD edition 2003 states under *What Happens to Your Heritage Benefit* states *"Specifically, your heritage benefit increases by the same percentage that your base pay grows between the transfer date and the date you leave or retire from the Company. For example, assume you decide to retire four years after your benefit transferred to the Plan. If your salary increases by 10 percent in this four-year period, your heritage benefit also will increase by 10 percent."*   This example results in a benefit that is higher than the PVP Pension estimates but lower than if BCERP was used to calculate the plaintiffs monthly benefit.

C. The page goes on to say *"When you retire, your heritage benefit will be added to your credit-based benefit. You will receive the larger of that amount (heritage benefit plus credit-based benefit) or the minimum benefit, ….:"*   The plaintiff earns zero credits as she was not an active participant in PVP because she was back in BCERP on January 1, 1999.

D. Considering the plan clearly states PVP "participation"  starts January 1, 1999, but the retroactive change was Dec. 31, 1998, it does not appear to have fully addressed the situation of changing from management pay code back to SPEEA engineering within one minute of each other. It results in a zero in the credits portion of the pension formula and does not add the 0.333 for over 20 years or add the extra year of service for heritage Boeing in the plan Jan 1, 1999.

**RELIEF**

1. Financial

A. Rule the transfer of all plaintiffs' earned BCERP into PVP on December 31 1998 and the subsequent 2016 PVP wage freeze are invalid for the reasons stated herein.   The plaintiff's entire pension benefit shall be calculated using the BCERP plan formula.

B.  Interest on any past due benefits

C. Pay at least the SPEEA voluntary layoff bonus that would have been accompanied the October 21, 2016 layoff that plaintiff did not take because it required abdication of any legal action against Boeing including this dispute.  At a minimum award the 26 weeks pay consistent with those in her skill code whose work was not moving out of state. It is requested the court consider instead awarding the higher 52 weeks bonus for work movement out of state. In 2016 she was working AWACS full time which moved out of state. It paid the higher the out -of-state bonus to her co-workers (engineers in multiple disciplines). This was her third assignment meeting the criteria of work moving out of state. This higher amount would aid in covering costs not eligible for reimbursement related to this matter and also serve as recompense for Boeing's refusal to engage in two way communication except by going to court. Two way communications would likely have avoided court entirely.

D. Reimburse legal costs at the maximum level permitted

2. Procedural

1. Change the PVP pension estimates report to show inputs and formula for "heritage Boeing benefit" calculation in the same way as done in the existing BCERP pension report for SPEEA.

2. Change time to submit the formal pension appeal to allow it to be 60 days after the re-characterization review is complete to allow it to be addressed in appeal when a claim has triggered the start of the 60 day submittal clock.

3. Require Boeing to change their process to require re-characterization denial rationale to be provided in writing to the requestor when intended for use as part of the formal Pension Appeal process.

4. Require Boeing to change their process to provide employee the option to reopen the re-characterization request if formal Pension Appeal is denied and new information is available...

JURY DEMAND

Jury requested

Jury requested in part because ERISA 204 (B) (h)(2) requires notices to be *"understood by the average plan participant and shall provide sufficient information (as determined in accordance with regulations prescribed by the Secretary of the Treasury) to allow applicable individuals to understand the effect of the plan amendment."*

DATED this 8th day of September 2017

Pursuant to NRS 53.045, I declare under penalty of perjury that the foregoing is true and correct.

*Arlene M Brown*

Signature of Plaintiff

Arlene M. Brown

Name, address and phone number of plaintiff

Arlene M Brown

239 SW 189th Pl

Normandy Park WA 98166

Phone (206)431-8693

pensionrights707@gmail.com